UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | Case No. 06-80243 |
| BENCHMARK HOMES, INC. | ) | Chapter 11 |
| Debtor. | ) | |
| IN THE MATTER OF: | ) | Case No. 06-80249 |
| SADDLEBROOK PROPERTIES, LLC, | ) | Chapter 11 |
| Debtor. | ) | |
| IN THE MATTER OF: | ) | Case No. 06-80250 |
| ONE NINETY-TWO, LLC, | ) | Chapter 11 |
| Debtor. | ) | |
| IN THE MATTER OF: | ) | Case No. 06-80251 |
| CANTERBERRY CROSSING, LLC, | ) | Chapter 11 |
| Debtor. | ) | |
| IN THE MATTER OF: | ) | Case No. 06-80248 |
| ASHFORD HOLLOW, LLC, | ) | Chapter 11 |
| Debtor. | ) | |

**ORDER APPROVING SALE OF CERTAIN REAL ESTATE FREE AND CLEAR OF LIENS AND ENCUMBRANCES AND APPROVING SALE PROCEDURES**

This matter comes before the Court on the motion (filing number ____: the "Motion") of Benchmark Homes, Inc., and its affiliated above-named bankruptcy estates (collectively the "Debtors"), for the entry of an Order authorizing certain real estate owned by the Debtors to be sold free and clear of liens and encumbrances and setting forth the procedure for the sale.

THE COURT HEREBY FINDS THAT:

A. The Debtors are the record owners of certain real estate legally described as follows:

Lots 217, 222-226, 229, 233-240, 244, 247-257, 259-263, 269-276, 278-283, 288, 290, 291, 295, 296, 298, 299, 301, 302, 304-306, 308-314, 316-318,

320, 325-327, 332-338, 341, 342, 344-353, 355, 357-360, 362, 364, 365, 370, 371, 375-380, 383-402, 404-409, 411-427 and Outlots 2-5 and 12 in Saddlebrook, a Subdivision as surveyed, platted and recorded in Douglas County, Nebraska (the "Saddlebrook Lots")

Lots 8-10, 14-20, 39, 40, 43, 45, 46, 50, 57, 58 in Saddlebrook, a Subdivision as surveyed, platted and recorded in Douglas County, Nebraska (the "Saddlebrook Villas Lots")

Lots 1-10, 94, 95, 100, 101, 446, 450-454, 456-458, 463-467, 473-481, 484-487, 490-495, 498-508, 513-516, 518-538, 542, 543, 545, 546, 548-560, 562-567, 569, 570, 572-579, 582-584, 586-591, 603-606, 611, 612, 617, 621-626, 634, 635, 637-639, 644-648, 652-656, 660, 661, and Outlots B, C, D, E, F, Z, AA, BB, CC, DD, EE, and FF in The Grove, a Subdivision as surveyed, platted and recorded in Douglas County, Nebraska and Lots 1-80 and Outlots A, B, C and D in The Grove, Replat 6, a Subdivision as surveyed, platted and recorded in Douglas County, Nebraska (the "Grove Lots")

Lots 11, 12, 21-23, 27, 29, 30, 39, 40, 63, 64, 77-81, 86, 87 and 91 in Villas at the Grove, a Subdivision as surveyed, platted and recorded in Douglas County, Nebraska (the "Grove Villas Lots")

Lots 1 through 29, 32 through 80, 82 through 124 and Outlots A, B and C in Canterberry Crossing, a Subdivision as surveyed, platted and recorded in Douglas County, Nebraska (the "Canterberry Lots")

Lots 1 through 9, 12 through 40, 44 through 51, 53 through 58, 60 through 64, 66 through 68, 70, 71, 74 through 76, 78 through 81, 84, 86 through 88, 92 through 106, 108, 110 through 124, 127 through 131, 133, 136 through 144, and 148 through 151 in Ashford Hollow, a Subdivision as surveyed, platted and recorded in Sarpy County, Nebraska (the "Ashford Lots")

That part of Tax Lot 12C1 in the Southwest Quarter of the Southwest Quarter of Section 29, Township 12, North, Range 12 East, in Sarpy County, Nebraska, as further described on Exhibit A, attached hereto and incorporated herein by reference (the "Undeveloped Ashford Property") and

2

Lot 445 in The Grove, a Subdivision as surveyed, platted and recorded in Douglas County, Nebraska (the "Apartment Lot").

The Saddlebrook Lots, the Saddlebrook Villas Lots, the Grove Lots, the Grove Villas Lots, the Canterberry Lots, the Ashford Lots, the Undeveloped Ashford Property and the Apartment Lot shall collectively be referred to herein as the "Development Lots."

B.  The Debtors own the Development Lots subject to development loans made to the Debtors by First National Bank of Omaha ("First National"), TierOne Bank ("TierOne") and Great Western Bank & Trust Company ("Great Western"). Collectively, First National, TierOne and Great Western shall be referred to herein as the "Development Lenders." As of the date upon which the first of the Debtors declared bankruptcy, the unpaid balance on the First National development loan related to the Saddlebrook Lots and the Saddlebrook Villas Lots was Two Million Four Hundred Eighty Thousand Five Hundred Eighty-seven and 28/100 Dollars ($2,480,587.28), as evidenced by loan documents executed by the Debtors, including, but not limited to, a Promissory Note dated April 26, 2000 (as amended by Promissory Note dated April 22, 2004) and a Deed of Trust dated April 26, 2000, recorded at Book 6029, Page 514 of the Douglas County Register of Deeds (the "Saddlebrook Loan"). As of the date upon which the first of the Debtors declared bankruptcy, the unpaid balance on the First National development loan related to the Grove Lots, the Grove Villas Lots and the Apartment Lot was Three Million Two Hundred Twenty-two Thousand One Hundred Sixteen and 04/100 Dollars ($3,222,116.04), as evidenced by loan documents executed by the Debtors, including, but not limited to, a Promissory Note dated March 13, 2001 (as amended by Promissory Note dated April 22, 2004) and a Deed of Trust dated March 12, 2001, Instrument No. 2001-05723 filed with the Douglas County Register of Deeds (the "Grove Loan"). As of the date upon which the first of the Debtors declared bankruptcy, the unpaid balance on the TierOne development loan related to the Canterberry Lots was $1,844,864.00, as evidenced by loan documents executed by the Debtors, including, but not limited to, a Note Secured by Construction Security Agreement dated August 16, 2004 and a Construction Security Agreement/Deed of Trust with Assignment of Rents and Security Agreement dated August 16, 2004, Instrument Number 2004-109386 filed with the Douglas County Register of Deeds (the "Canterberry Loan"). As of the date upon which the first of the Debtors declared bankruptcy, the unpaid balance on the Great Western loans secured by the Ashford Lots and the Undeveloped Ashford Property was $4,041,269.10, as evidenced by loan documents executed by the Debtors,

including, but not limited to, Promissory Notes dated July 10, 2005 and February 6, 2006 and Deeds of Trust dated February 28, 2004 and February 6, 2006, Instrument Numbers 2004-07460 and 2006-04631 filed with the Sarpy County Register of Deeds (the "Ashford Loan"). Collectively, the Saddlebrook Loan, the Grove Loan, the Canterberry Loan and the Ashford Loan shall be referred to herein as the "Development Loans."

C.    Based upon the proportionate per lot release prices set forth in the Development Loan documents, the number of lots subject to the Development Loan documents, the degree of completion of the subdivisions in which the Development Lots are located, and market value considerations, the percentage value of the Development Lots subject to the Saddlebrook Loan, the Grove Loan, the Canterberry Loan, and the Ashford Loan, are established as follows:

| SADDLEBROOK LOAN | |
|---|---|
| Saddlebrook Lots | 88% |
| Saddlebrook Villas Lots | 12% |
| **TOTAL** | **100%** |

| THE GROVE LOAN | |
|---|---|
| The Grove Lots | 84% |
| The Grove Villas Lots | 7% |
| The Apartment Lot | 9% |
| **TOTAL** | **100%** |

| CANTERBERRY LOAN | |
|---|---|
| Canterberry Lots | 100% |
|  |  |
| **TOTAL** | **100%** |

| ASHFORD LOAN | |
|---|---|
| Ashford Lots | 79% |
| Undeveloped Ashford Property | 21% |
| **TOTAL** | **100%** |

The above percentages, multiplied by the outstanding loan balance on the applicable Development Loan, shall be referred to herein as the "Allocated Loan Balance."

D. The Allocated Loan Balances, as of July 6, 2006, are approximately computed as follows:

| SADDLEBROOK LOAN | |
|---|---|
| Saddlebrook Lots | $2,283,288.94 |
| Saddlebrook Villas Lots | $311,243.94 |

| THE GROVE LOAN | |
|---|---|
| The Grove Lots | $2,832,988.39 |
| The Grove Villas Lots | $236,832.37 |
| The Apartment Lot | $304,213.042 |

| CANTERBERRY LOAN | |
|---|---|
| Canterberry Lots | $1,954,293.00 |

| ASHFORD LOAN | |
|---|---|
| Ashford Lots | $3,306,956.10 |
| Undeveloped Ashford Property | $879,064.30 |

The above Allocated Loan Balances include unpaid principal, pre-petition and post-petition interest (including default interest), expenses, and legal fees, including, but not limited to, fees incurred in protecting such Development Lenders' rights in the bankruptcies of the Debtors, as currently computed, based upon the Development Loan documents. The Allocated Loan Balances shall be subject to recalculation based upon changes in the costs incurred by the Development Lenders in maintaining and protecting the Development Lots, changes in interest rates under the terms of the Development Loan documents, or receipt of full or partial payment of the Development Loans, including the receipt of any lot release payments made under the terms of the Development Loan documents.

E. Based upon the Allocated Loan Balances and proportionate values set forth above,

and the representation of the Trustee, the Debtors may have equity in the Development Lots, such that the sale of the Development Lots may yield funds to pay unsecured creditors of the Debtors and to finance the operations of the Trustee.

F.  Time is of the essence to affect the sale of the Development Lots so that the purchaser of such lots will have such lots available for sale during the 2006 building season, with the further benefit that a prompt sale may be beneficial to sale of Debtors' houses in various stages of construction, but without a buyer.

G.  The Debtors would be benefited by the timely sale of the Development Lots, and by selling the Saddlebrook Lots, the Saddlebrook Villas Lots, the Grove Lots, the Grove Villas Lots, the Apartment Lot, the Canterberry Lots, the Ashford Lots and the Undeveloped Ashford Property through a competitive bidding process.

It is therefore ORDERED, ADJUDGED, AND DECREED as follows:

1.  The Trustee shall conduct the sale of the Development Lots in accordance with the following terms:

a.  The Development Lots shall be sold to the highest bidder on June 22, 2006, at 1:00 p.m. Such sale shall take place at the offices of First National, located at 14310 First National Bank Parkway, Omaha, Nebraska 68154. The Canterberry Lots shall be sold together in a single auction to the highest bidder, followed by the sale of the Saddlebrook Lots, the Saddlebrook Villas Lots, the Grove Lots, the Grove Villas Lots, the Ashford Lots, the Undeveloped Ashford Property, and the Apartment Lot, in the same manner. The minimum bid to be accepted on any of the Development Lots shall be 105% of the Allocated Loan Balance, as recalculated based upon changes in costs or interest rates or receipt of partial payment, on July 6, 2006. If the highest bid for the lots being sold is greater than the minimum bid established above, the highest bidder shall within one (1) hour furnish to the Trustee a deposit of no less than $200,000, in immediately available funds, refundable to the bidder only if the Debtors fail or refuse to close the sale for which the bid has been received. A Development Lender may, on the Development Lots against which it has recorded a Deed of Trust, submit a credit bid in accordance with Section 363(k) of the Bankruptcy Code. A Development Lender submitting a credit bid for the lots on which it holds a Deed of Trust shall not be required to deliver a deposit to the Trustee.

b.  On Friday, June 2, 2006, Friday, June 9, 2006 and Friday, June 16, 2006, the

Trustee shall publish in the Daily Record and in the Midlands Business Journal a Notice of Auction Sale. The Notice of Auction Sale shall set forth the legal description of each of the groups of the Development Lots to be sold, the minimum bid for each and the time and place of the sale. The Trustee may take such further action in publicizing and advertising the auction sale as he deems reasonable and appropriate.

c. The Trustee shall obtain and make available for inspection at his offices title searches, issued by First Nebraska Title & Escrow Company, for each of the Development Lots. The Trustee shall also make available for inspection at his offices a copy of this Order as entered by the Court. The Trustee shall not be authorized or required to obtain a seller's title insurance policy insuring the title to Development Lots.

e. The closing of the sale transaction and the transfer of title to the highest bidder shall occur on July 6, 2006, or on such earlier date as mutually agreed to by the successful bidder and the Trustee. Closing shall be conducted by First Nebraska Title & Escrow Company. All costs associated with the closing of sale and transfer of title shall be paid by the successful bidder. Amounts paid by the highest bidder shall include, but not be limited to, closing fees, recording fees, real estate transfer taxes, buyer title insurance premium (if any), and preparation costs of the closing documents. Upon delivery by the highest bidder of the amount of the winning bid, less any deposit received (and, in the event that the highest bidder is a Development Lender, less the amount of any credit bid made under Section 363(k) of the Bankruptcy Code), in immediately available funds, the Trustee shall deliver to the highest bidder a deed or deeds granting title to the real estate purchased, free and clear from all liens and encumbrances except for real estate taxes and special assessments, levied or unlevied, as of the date of such transfer, all utility and other easements of record, and the Declaration of Covenants recorded against the applicable subdivision. The purchaser of the Grove Lots, the Saddlebrook Lots, the Canterberry Lots and the Ashford Lots shall be entitled to be appointed Declarant under any such covenants, conditions, restrictions and easements for the respective subdivision. All liens on the Development Lots shall attach to the specific proceeds of the sale of such Development Lots against which the liens were filed or recorded, and shall attach in the same manner and priority as existed prior to the auction sale.

f. Upon the receipt of payment and transfer of title of the Development Lots,

7

the proceeds shall be distributed by the Trustee as follows:

    i.    First, the cost of publishing the notice of auction sale, publicizing and advertising the auction sale, preparing any necessary documents and pleadings, the cost of obtaining a title search on the Development Lots and costs of conducting the auction sale (the "Sale Costs") shall be paid to the Trustee. Then,

    ii.    the remaining proceeds, less the Sales Cost, shall be paid to the Development Lender holding the Deed or Deeds of Trust on the Development Lots sold. To the extent that proceeds are sufficient, and until they are exhausted such Development Lender shall be entitled to recover unpaid principal, pre-petition and post-petition interest (including default interest), expenses, and legal fees, including, but not limited to, fees incurred in protecting such Development Lenders' rights in the bankruptcies of the Debtors. Then,

    iii.    to the extent that there are funds remaining following payment of the Sale Costs to the Trustee and amounts owing to the Development Lender, such funds shall be retained by the Trustee.

2.    In the event that one or more of the groups of the Development Lots does not receive a minimum bid of the Allocated Loan Balance, such Development Lots shall be identified as Unsold Lots. Upon appropriate motion and without further notice or hearing, the Development Lender holding the deed of trust on the Unsold Lots shall be granted relief from the stay in bankruptcy. The fact that there are Unsold Lots subject to a Development Lender's deed of trust shall not affect the validity of the sale of other Development Lots subject to the deed of trust which have received a bid equal to or greater than the minimum bid.

3.    Good cause has been shown for the entry of this Order. The sale of the Development Lots pursuant to this Order shall timely resolve a significant amount of the Debtors' overall debt, and is believed, based upon known loan balances and appraised values, to have the potential to bring funds into the Debtors' estates for use by the Trustee in administration of the estates and for payment to the unsecured creditors of the Debtors.

4.    This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, to the extent of any inconsistency between the terms of this Order and the provisions of any documents or agreements related to the proposed petition sale of the Development Lots, the terms and conditions of this Order shall prevail.

Dated this _____ day of _____, 2006.

                BY THE COURT:

                _____
264234                 Bankruptcy Court Judge

EXHIBIT "A"

Lot 1, in TWIN CREEK ESTATES, a Subdivision as surveyed, platted and recorded in Sarpy County, Nebraska.

AND

That part of Tax Lot 12C1 in the Southwest Quarter of the Southwest Quarter (SW ¼ SW ¼) of Section 29, Township 14 North, Range 13 East of the 6th P.M., in Sarpy County, Nebraska, lying South and West of the following described tract:

Commencing at the Southwest corner of the Southwest Quarter of Section 29; thence North 01°25'53" West (assumed bearing), for 586.12 feet, along the West line of the Southwest Quarter of Section 29, to the true Point of Beginning; thence continuing North 01°25'53" West, for 308.11 feet, along said West line, to the South right-of-way line of the former Union Pacific Railroad; thence South 63°58'49" East, for 2,020.25 feet, along said South right-of-way line, to the South line of the Southwest Quarter of Section 29; thence South 89°45'13" West for 667.13 feet; along the South line of the Southwest Quarter of Section 29; thence North 58°41'39" West, for 238.61 feet; thence North 63°59'22" West, for 1,042.36 feet, to the Point of Beginning.